Aaron Charles HALL, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.

No. 13–CV–6283 EAW.

United States District Court, W.D. New York.

Signed Aug. 11, 2014.

Howard D. Olinsky, Olinsky Law Group, Syracuse, NY, for Plaintiff.

David L. Brown, Social Security Administration, New York, NY, Kathryn L. Smith, U.S. Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### I. INTRODUCTION

Plaintiff Aaron Hall ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review·of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for disability insurance benefits. (Dkt. 1). Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Gerardo R. Pico was not supported by substantial evidence in the record and was based on erroneous legal standards.

Presently before the Court are the parties' opposing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 7, 10). For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted in part, and this matter is remanded for further administrative proceedings.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### A. Overview

On April 6, 2011, Plaintiff protectively filed an application for disability insurance benefits. (Tr. 59, 220). Plaintiff alleged a disability onset date of January 1, 2011, due to lower spine nerve damage.[1] (Tr.

---

1. At the hearing, Plaintiff's alleged onset dates was amended from June 16, 2010, to January

220). Plaintiff's application was initially denied on June 23, 2011. (Tr. 59). Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ") on July 1, 2011. (Tr. 80). On June 19, 2012, Plaintiff, represented by counsel, testified at a hearing before ALJ Gerardo R. Pico. (Tr. 26–58). An Impartial Medical Expert ("ME"), Dr. German E. Malaret, and a Vocational Expert ("VE") Carmen Valladares de Miranda, also appeared and testified. (Tr. 16).

On July 13, 2012, ALJ Pico issued a decision finding Plaintiff not disabled. (Tr. 13–25). On April 5, 2013, the Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner.; (Tr. 1–4). Plaintiff commenced this civil action appealing the final decision of the Commissioner on June 3, 2013. (Dkt. 1).

### B. The Non–Medical Evidence

At the time of the alleged onset of disability, Plaintiff was 46 years old. (Tr. 21). Plaintiff has a high school education. (Tr. 220). Plaintiff's past work includes blender and laborer. (Tr. 220–21).

### 1. Plaintiff's Testimony

Plaintiff testified that he injured his back at work in June 2010, while picking up a 55 gallon drum of salted vodka that had fallen off of a pallet. (Tr. 31). He stated that he received multiple hydrocortisone shots, attended physical therapy, and engaged in stretching exercises at home, and that the best relief came from the shots, but that the relief only lasted for a few days. (Tr. 32–33).

Plaintiff indicated that he used a TENS unit every day when he got up in the morning and before bed. (Tr. 47). Plaintiff testified that he did not take narcotic pain medication because it made him sick

and angry and it caused problems in his household. (Tr. 48).

Plaintiff testified that the temperature would impact his back pain "dramatically." (Tr. 47). For example, a damp or humid day would cause his leg to hurt "all day long." (*Id.*).

Plaintiff stated that sitting for longer than 45 minutes to one hour was "unbearable." (Tr. 48). The most comfortable position was to lay flat on his back on the floor and raise his knees up with his feet on the back of a foot stool. (Tr. 50). Plaintiff testified that he only got two to three hours of sleep in a night, and that he had difficulty concentrating due to the lack of sleep and back pain. (*Id.*).

According to Plaintiff, he could not work for more than four hours in an eight hour workday, and he would have to get up to walk around frequently. (Tr. 49).

### 2. The Vocational Expert's Testimony

At the hearing, the ALJ presented the VE with a hypothetical question. (Tr. 42–43). The VE was asked to consider someone of Plaintiff's age, education, and experience who was limited as follows:

> limited to lift and carry 20 pounds occasionally, 10 pounds frequently. No limitations in sitting. Standing and walking limited to four hours. Be able to change positions frequently. Occasional bending, stooping, crawling, crouching. No exposure to high ladders, scaffolds, unprotected heights.

(Tr. 42). The VE testified that a hypothetical individual with these abilities and restrictions would be able to perform occupations that existed in significant numbers in the national economy, including the representative occupations of inspector/examiner, ticket marker/ticketer, final assem-

1, 2011. (Tr. 57, 215).

bler, electronic worker, and cuff folder. (Tr. 46).

Plaintiff's attorney asked the VE to consider the additional limitations of being off task 10 percent of the day, or missing two or more days of work per month of unscheduled absences. (Tr. 54). The VE stated that such an individual would not be able to work. (Tr. 55).

### 3. Plaintiff's Self–Reported Functional Capacity Assessment

In a June 25, 2011 function report, Plaintiff Stated that, on a typical day, he would get up to stretch, have a coffee, take his medicine, go for a half mile walk, use the TENS unit, and continue to use the TENS unit every two hours until bed. (Tr. 229). Plaintiff indicated that he would fix himself a sandwich or soup for lunch, but that his wife would prepare any major meals. (Tr. 230). He stated; that he carved wood or antlers and watched TV on a daily basis, and that he could go out of the house for a little shopping or to go to the library. (Tr. 232–33). Plaintiff noted that his back pain prevented him from lifting, bending, mowing the lawn, or hunting. (Tr. 238).

### 4. Workers' Compensation Order

On December 2, 2010, Workers' Compensation ALJ Steve Molik determined that Plaintiff had a temporary total disability for eight weeks from June 18, 2010, through August 13, 2010. (Tr. 322). ALJ Molik found that Plaintiff had no compensable lost time between August 23, 2010, and October 20, 2010, but was under temporary partial disability for 5.8 weeks from October 20, 2010 to November 30, 2010. (*Id.*).

### C. Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

On June 21, 2010, Plaintiff was examined by Dr. Joseph W. Hinterberger. (Tr. 340). Dr. Hinterberger reported his findings in a workers' compensation board form dated June 22, 2010. (Tr. 272–75). At the examination, Plaintiff indicated that he injured himself while lifting a 55 gallon drum of vodka at work. (Tr. 340). Plaintiff claimed that his pain increased throughout the day, causing him to leave work early. (*Id.*). Plaintiff reported that when he returned to work, he experienced a "numb tingling sensation radiating down his left leg all the way to his toes." (*Id.*). Dr. Hinterberger observed that Plaintiff was favoring his left side, and that he used the "arms of the chair to get up and all weight off of the left foot." (*Id.*). Upon examination, the doctor noted "palpable spasm and tenderness at the left paralumbar region," and "definite left sciatic notch tenderness." (*Id.*). Dr. Hinterberger recommended that Plaintiff stay out of work for one week, treat with alternate warm and cool packs, stretch, take 800 mg of ibuprofen three times per day and Tylenol every four to six hours as needed. (*Id.*).

Plaintiff returned to Dr. Hinterberger on June 28, 2010 for reevaluation. (Tr. 339). Plaintiff complained of increased pain and symptoms in both the left and right sides. (*Id.*). Plaintiff stated that "sitting for periods of time reproduce[d] his symptoms." (*Id.*). The doctor again observed that Plaintiff used the arms of the chair to stand and favored his left leg when standing. (*Id.*). Dr. Hinterberger noted "exquisite bilateral SIJ tenderness, left more than right, exquisite left sciatic notch tenderness." (*Id.*). Further, "[f]lexion, extension, and lateral bends are minimal secondary to significant discomfort." (*Id.*). Dr. Hinterberger prescribed Lortab for Plaintiff's discomfort, discontinued the Tylenol, and recommended contin-

ued use of ibuprofen 800mg. (*Id.*). The doctor decided to keep Plaintiff out of work and schedule physical therapy. (*Id.*).

On July 1, 2010, Plaintiff had an MRI of the lumbosacral spine that showed "mild degenerative disc disease extending from T12 to L4, which is greatest at L3–L4." (Tr. 346).

Plaintiff began physical therapy at Schuyler Hospital Rehabilitation Services on July 8, 2010. (Tr. 364–65). Plaintiff reported pain at a level of 9.5 out of 10, and claimed that his pain was aggravated by sitting longer than 45 minutes, standing for more than 15 minutes, and lying on his left side. (Tr. 364). Plaintiff underwent physical therapy from July 8 to December 15, 2010. (Tr. 349–82). On December 1, the physical therapist noted that Plaintiff did not appear for his visits between November 17 and December 1. (Tr. 359–60, 382). Plaintiff had attained 5 out of 6 goals, but he still complained of pain after standing for more than four hours. (Tr. 382). As Plaintiff progressed through physical therapy, the therapist noted that Plaintiff's pain was decreasing, and that Plaintiff was progressing toward established goals. (Tr. 352–53, 357, 362, 376, 368, 371–72, 374–75, 378–80).

Dr. Hinterberger completed a second workers' compensation board report on July 13, 2010, based on his July 12, 2010 examination of Plaintiff. (Tr. 280–81). Dr. Hinterberger noted "left paralumbar spasm and tenderness," "definite left sciatic notch tenderness," and that "flexion, extension, lateral bends limited secondary to discomfort that goes to the left paralumbar region." (Tr. 338). Plaintiff was diagnosed with a sprain in the lumbar region and sciatica. (Tr. 280). Dr. Hinterberger determined that Plaintiff was not ready to return to work and recommended a follow up appointment in two weeks. (Tr. 338).

On July 26, 2010, Dr. Hinterberger examined Plaintiff and found that Plaintiff was not "safe to return to the work setting." (Tr. 337).; Plaintiff reported he could only walk the length of his driveway before his pain worsened, and that his pain radiated down his leg to his ankle. (*Id.*). Dr. Hinterberger recommended that Plaintiff take 50 mg of tramadol as well as the 800 mg of ibuprofen, and use Lortab for breakthrough pain. (*Id.*).

On July 30, 2010, Dr. Peter Romeo conducted an independent medical evaluation for the workers' compensation board. (Tr. 286–87). Plaintiff reported a tingling sensation in his left leg and experienced a pulling sensation in his lower back when flexing. (Tr. 287). Dr. Romeo opined that Plaintiff should complete physical therapy three times per week for three weeks, accompanied by at home exercises, nonnarcotic analgesics, and anti-inflammatory medications. (Tr. 287). Dr. Romeo further opined that Plaintiff could return to work with restrictions on repetitively lifting more than 10 pounds, never lifting more than 20 pounds, and needing to change positions as desired. (Tr. 287).

Plaintiff returned to Dr. Hinterberger on August 16, 2010, complaining of continued back pain. (Tr. 336). Plaintiff indicated that he experienced pain when driving, and felt better when he could change positions, but that pushing and pulling caused "significant" symptoms. (*Id.*). Dr. Hinterberger opined that Plaintiff could not return to his regular work, but that he may be able to return to light work if he "could be allowed to change positions from sitting to standing to walking essentially at will and could do very limited lifting and carrying with no pushing or pulling, or perhaps simply doing fine motor activities with his hands with the ability to change positions frequently." (*Id.*).

On September 3, 2010, Dr. Hinterberger observed that Plaintiff alleged significant subjective pain, but was able to do light work in his employment setting. (Tr. 335). Plaintiff reported that it was uncomfortable for him to work on concrete flooring. (*Id.*). Dr. Hinterberger noted that Plaintiff was able to rise from the examination table without assistance and his forward flexion, extension, and lateral bends had improved. (*Id.*). The doctor opined that Plaintiff should continue on light duty work with the same limitations. (*Id.*).

After an examination on September 24, 2010, Dr. Hinterberger noted that Plaintiff's symptoms had improved. (Tr. 334). Plaintiff had forward flexion, extension, and lateral bends within normal limits, and the doctor released Plaintiff to work with limitations from repetitive bending and lifting, with a maximum lifting ability of 35 pounds. (*Id.*).

On October 19, 2010, Plaintiff treated with Dr. Hinterberger and complained of worsened symptoms as a result of using a forklift on hard and uneven ground to load and unload bales. (Tr. 333). Dr. Hinterberger noted that Plaintiff's symptoms had worsened, and that Plaintiff rose from the chair slowly, using the arms of the chair for support when rising. (*Id.*). Dr. Hinterberger noted that workers compensation had denied additional pain management injections and thereby decreased Plaintiff's work status to "avoid bending, twisting, climbing, kneeling, lifting, operating motor vehicles or heavy equipment . . . 20 pound lifting restriction as well." (*Id.*).

After a November 22, 2010 examination, Dr. Hinterberger noted definite left sciatic notch tenderness on palpation and that Plaintiff became symptomatic with increased activity. (Tr. 332). Plaintiff reported that if he walked stairs, steps, or hills, he would "pay for it." (*Id.*). Dr. Hinterberger noted that physical therapy was not helping Plaintiff to make any real improvements, and he adjusted Plaintiff's pain medications. (*Id.*). Dr. Hinterberger opined that Plaintiff should continue to not lift anything over 20 pounds, and should be restricted in driving, bending, twisting, squatting, and crawling. (*Id.*).

On December 22, 2010, Plaintiff treated with Ashraf Sabahat, M.D., at the Schuyler Hospital Pain Management Clinic. (Tr. 341–42). Dr. Sabahat noted "severe tenderness with deep palpation over his left-side sacroiliac joint" and recommended that Plaintiff undergo a sacroiliac joint injection. (Tr. 342). Plaintiff also treated with Dr. Hinterberger on that date, and the doctor noted that Plaintiff reported pain relief from using the TENS unit, but that it only provided limited relief. (Tr. 331). The doctor opined that Plaintiff could return to light duty work with the prior stated limitations if the work was available. (*Id.*).

Plaintiff received a sacroiliac joint injection on the left side on January 19, 2011. (Tr. 345).

On February 9, 2011, Plaintiff treated with Dr. Hinterberger. (Tr. 330). Plaintiff was uncomfortable with movement, but had a better range of motion. (*Id.*). Plaintiff was using the TENS unit, but the pain medications were making him drowsy, so Dr. Hinterberger adjusted the medication. (*Id.*). The doctor assessed Plaintiff with an 80% temporary impairment and opined that Plaintiff could drive short distances or use foot controls and pedals occasionally. (*Id.*).

Plaintiff received a sacroiliac joint injection on the left side on March 9, 2011, and again on April 11, 2011. (Tr. 343–44).

On April 13, 2011, Plaintiff treated with Dr. Hinterberger, who noted that Plaintiff was not using the narcotic pain medications, but was finding some relief from

the injections and TENS unit. (Tr. 329). Dr. Hinterberger noted some discomfort and pulling with extension that "reproduce[d] his lumbosacral discomfort; reproduce[d] his left sciatica all the way down to the toes." (*Id.*). The doctor opined that he would leave Plaintiff's prior restrictions in place with "the exception of releasing him from the restriction of driving or working safely since he is no longer on narcotic level pain relief." (*Id.*).

On June 14, 2011, consultative examiner Look Persaud, M.D. opined that Plaintiff had a "[m]oderate restriction from squatting," a "[m]ild restriction from kneeling and crawling," and a "[m]ild to moderate restriction from bending, twisting, and turning." (Tr. 385). Dr. Persaud also opined that Plaintiff had "moderate to marked restriction for lifting, carrying, pushing, and pulling due to his back pain with intermittent left lumbar radiculopathy." (*Id.*). Plaintiff used a cane for stability and had an abnormal gait. (Tr. 384). Plaintiff reported that his wife did all of the cooking, cleaning, laundry, and shopping, but that he showered twice weekly and dressed himself daily. (Tr. 383). Dr. Persaud diagnosed Plaintiff with "[l]ow back pain with intermittent left lumbar radiculopathy." (Tr. 384).

On September 8, 2011, Dr. Robert Reed completed a report for the workers' compensation board. (Tr. 423). Plaintiff moved slowly and used a cane, had a decreased range of motion, and decreased sensation in his left calf with tenderness in the left lower lumbar back into the left sacroiliac joint and sciatic notch region. (Tr. 425). Dr. Reed recommended Plaintiff obtain a new MRI and placed Plaintiff on light duty work. (*Id.*).

The September 21, 2011 MRI of Plaintiffs lumbar spine showed mild degenerative changes with mild disc bulges at L2–L3 and L3–L4 and "mild central canal stenosis results from moderate facet arthropathy and congenitally short pedicles." (Tr. 422).

On November 29, 2011, Plaintiff treated with Vidyasagar Mokureddy, M.D. (Tr. 406–08). Plaintiff described constant and sharp pain that was worsened by walking or prolonged sitting. (Tr. 406). Plaintiff had "moderate to severe spasms noted on deep palpation over piriformis muscle, left side." (Tr. 408). Dr. Mokureddy diagnosed low back pain, sacrolitis, and sciatic nerve lesion and scheduled Plaintiff for a left sacroiliac joint injection. (*Id.*).

Plaintiff treated with Dr. Reed on December 12, 2011. (Tr. 415–16). Plaintiff reported relief from the sacroiliac injection, but stated that the symptoms were slowly returning. (Tr. 415). Dr. Reed noted that physical therapy was recommended, but had not been approved by workers' compensation. (*Id.*). Dr. Reed continued Plaintiff on light duty work. (Tr. 416).

On December 22, 2011, Plaintiff treated with Dr. Mokureddy. (Tr. 401–03). Plaintiff reported relief with the TENS unit but increased pain with walking and prolonged sitting. (Tr. 401). Dr. Mokureddy diagnosed low back pain, sacrolitis, and sciatic nerve lesion and scheduled Plaintiff for another left sacroiliac injection. (Tr. 403).

On March 1, 2012, Plaintiff visited Dr. Mokureddy, who noted that Plaintiff's injection on December 30, 2011 had only provided pain relief for approximately five days. (Tr. 396). Plaintiff had "moderate to severe tenderness over the left joint." (Tr. 397). Dr. Mokureddy recommended Plaintiff for "radio frequency lesioning utilizing fluoroscopy at left L5, S1, 2, and 3 for denervating left sacroiliac joint." (Tr. 398).

On March 23, 2012, Plaintiff treated with Dr. Reed, who noted continued tenderness

in Plaintiff's lower back. (Tr. 411). Plaintiff had good range of motion and was continued on light duty work. (Tr. 412).

Plaintiff treated with Dr. Reed again on May 4, 2012, and reported that he had not started physical therapy because of gas costs and the difficulty of getting to the appointments. (Tr. 409). Plaintiff walked without the assistance of a device and had good range of motion. (*Id.*). Dr. Reed recommended that Plaintiff continue home exercises and cleared Plaintiff to return to light duty work. (Tr. 410).

At the hearing, ME Malaret testified that Plaintiff had lower back pain, numbness in the left leg, tenderness, and a less than normal range of motion. (Tr. 34–35). The ME stated that the objective clinical testing showed no evidence of nerve impingement and that the doctors were basing their diagnoses on Plaintiff's subjective complaints of pain. (Tr. 34, 38). The ME opined that Plaintiff would have the following limitations: lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; at least stand and walk for four hours in an eight hour day; occasionally bend, stoop, crawl, or crouch; avoid ladders and scaffolds. (Tr. 36). No auditory, visual, or manipulative limitations were noted. (*Id.*). ME Malaret acknowledged that Plaintiff was experiencing pain, but concluded that the pain was accounted for in the aforementioned limitations. (Tr. 38).

### D. Determining Disability Under the Social Security Act and the ALJ's Decision

█ The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see Rembert v. Colvin,* No. 13–CV–638A, 2014 WL 950141, at *6 (W.D.N.Y. Mar. 11, 2014). A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostics techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). The burden is on the claimant to demonstrate that he is disabled within the meaning of the Act. *See Draegert v. Barnhart,* 311 F.3d 468, 472 (2d Cir.2002). The individual will only be declared disabled if his impairment is of such severity that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the ALJ follows a five-step sequential analysis. If the ALJ makes a determination at any step, the evaluation will not continue to the next step. 20 C.F.R. § 416.920(a)(4). The following five steps are followed:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors

such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000); *See* 20 C.F.R. §§ 404.1520, 416.920.

Here, in applying the five-step sequential analysis at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity for the relevant time period, and that Plaintiff's work after the alleged onset date was an unsuccessful work attempt. (Tr. 18). At the second step, the ALJ determined that Plaintiff suffered the severe impairments of painful left sacroiliac joint, bulging disc, degenerative osteoarthritis, discogenic disease, and overweight. (*Id.*). The ALJ considered the testimony of medical expert Dr. German E. Malaret to determine at step three that these impairments did not meet or medically equal the severity of a listed impairment. (Tr. 18). The ALJ determined that Plaintiff had the residual functional capacity to:

> perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). The claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. He has no limitations sitting and can stand and walk for four hours in an 8–hour workday, with the need to change positions frequently. Lastly, he can occasionally bend, stoop, crawl and crouch and he cannot be exposed to high ladders, scaffolds, or unprotected heights. The claimant's mental abilities and capacities are intact as he has no medically determinable impairment [that] has lasted at least 12 consecutive months.

(Tr. 19). Accordingly, at the fourth step, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 21).

The ALJ then proceeded to the fifth step, which is comprised of two parts. First, the ALJ assessed Plaintiff's job qualifications considering his physical ability, age, and education. (Tr. 21). At the time of the alleged onset of disability, Plaintiff was 46 years old, had at least a high school education, and could communicate in English. (*Id.*). Second, the ALJ determined whether there were jobs existing in the national economy that a person with Plaintiff's qualifications and RFC could perform. (Tr. 22). The ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of an unskilled light occupational base was impeded by Plaintiff's additional limitations. (*Id.*).

Therefore, the ALJ posed hypothetical questions to the VE concerning an individual with Plaintiff's age, education, work experience, and RFC to determine if there were jobs in the national economy in significant numbers that Plaintiff could perform. (Tr. 21). Relying on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs existing in the national economy, including the representative jobs of examiner, ticketer, final assembler, electronic worker, and cloth folder. (Tr. 22). In light of these findings, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (*Id.*).

## III. DISCUSSION

### A. Standard of Review

■ This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3). "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451(PAC)(SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014) (quoting 42 U.S.C. § 405(g)). Title 42 U.S.C. section 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla," and "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987).

■ Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (stating that a reviewing Court does not examine a benefits case *de novo* ). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996).

Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).

### B. The ALJ's decision is not supported by substantial evidence.

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the ALJ failed to weigh the opinions of Plaintiff's treating physician Dr. Hinterberger, as well as the opinion of consultative examiner Dr. Persaud. (Dkt. 8 at 19). As a result, Plaintiff claims the ALJ's RFC finding was not supported by substantial evidence. (*Id.*).

#### 1. The ALJ failed to properly weigh the opinion of treating physician Dr. Hinterberger.

Plaintiff contends that Dr. Hinterberger's opinion that Plaintiff should not lift anything over 20 pounds and should avoid bending, twisting, climbing, kneeling, lifting, squatting, and crawling should have been afforded "great, if not controlling, weight" in accordance with the treating physician rule. (Dkt. 8 at 21; Tr. 329, 332–33).

■ Treating physicians "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical: findings alone or from reports of individual examinations, such as consultative examinations...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(C)(2). The

"treating physician rule" requires the ALJ to give "controlling weight" to the opinion of a claimant's treating physician "regarding the nature and severity of [the claimant's] impairments ... [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). As explained by the Second Circuit Court of Appeals:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir.2004). An ALJ does not have to explicitly walk through these factors, so long as the Court can "conclude that the ALJ applied the substance of the treating physician rule ... and provide[d] 'good reasons' for the weight she gives to the treating source's opinion." *Id.*

■ Here, the ALJ did not even address the opinions of Dr. Hinterberger. The record indicates that Plaintiff had a treating relationship with Dr. Hinterberger, as he was evaluated by the doctor on at least twelve occasions between June 21, 2010, and April 13, 2011. (Tr. 324–340). *Cf. Ryan v. Astrue,* No. 12 Civ. 8075(HBP), 2014 WL 1089041, at *13 (S.D.N.Y. Mar. 18, 2014) (citing 20 C.F.R.

§ 404.1502) ("A physician who has examined a claimant on one or two occasions is generally not considered a treating physician."). These opinions should have at least been acknowledged by the ALJ and discussed as to the weight assigned to the opinions considering the extensive nature of Dr. Hinterberger's treating relationship with Plaintiff. If the ALJ felt that the opinions were not of value or were in some way not supported by the medical evidence of record, then the ALJ should have explained those conclusions. *See Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable."). Had the ALJ adopted Dr. Hinterberger's opinion, the RFC may have incorporated additional limitations with regard to twisting, climbing, and kneeling.

■ "Under such circumstances, courts 'do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion ...,' and should continue to order remand when they 'encounter opinions from ALJ's [sic] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.'" *Smith v. Colvin,* No. 12–CV–1169–JTC, 17 F.Supp.3d 260, 269, 2014 WL 1746054, at *8 (W.D.N.Y. May 1, 2014) (quoting *Halloran,* 362 F.3d at 33); *see also Dunker v. Astrue,* No. 11–CV–321A, 2014 WL 297100, at *9 (W.D.N.Y. Jan. 27, 2014) (remanding where ALJ failed to acknowledge the treating source's opinion at all); *Austin v. Colvin,* No. 12–CV–1470 (NGG), 2013 WL 4077884, at *10–11 (E.D.N.Y. Aug. 12, 2013) (remanding where ALJ failed to provide reasons for "placing zero weight" on the opinions of treating sources).

■ The Commissioner argues that Dr. Hinterberger's opinions are reflected in the RFC, and that any additional limitations noted by Dr. Hinterberger, such as limitations on twisting, climbing, and kneeling, are reflected in the ALJ's limitation to light work. (Dkt. 10–1 at 21). Even if accurate, this is a *post hoc* rationalization that is not apparent from the face of the ALJ's decision. "A reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'" *Snell,* 177 F.3d at 134 (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).

Accordingly, this case is remanded for reconsideration of Dr. Hinterberger's opinions related to Plaintiff's functional limitations (Tr. 329, 332–33), and for a written explanation as to any basis for not according the opinion "controlling weight."

### 2. The ALJ failed to properly weigh the opinion of Dr. Persaud.

Plaintiff argues that the ALJ also failed to properly weigh the June 14, 2011 opinion of consultative examiner Dr. Persaud, and claims that Dr. Persaud's opinion was consistent with examination findings and supported by other evidence in the record. (Dkt. 8 at 24–25). Dr. Persaud opined that Plaintiff had a "mild restriction for prolonged standing and moderate restriction from walking on even surfaces." (Tr. 385). Dr. Persaud also noted that Plaintiff had "moderate to marked restriction from walking on uneven terrain, up inclines, ramps, and stairs." (Tr. 385). Dr. Persaud opined that Plaintiff had a "[m]oderate restriction from squatting," a "[m]ild restriction from kneeling and crawling," and a "[m]ild to moderate restriction from bending, twisting, and turning." (Tr. 385). Dr. Persaud stated that Plaintiff had "moderate to marked restriction for lifting, carrying, pushing, and pulling due to his

back pain with intermittent left lumbar radiculopathy." (Tr. 385). Plaintiff argues that the ALJ should have afforded Dr. Persaud's opinion great weight, but at least should have explained the weight given to the opinion. (Dkt. 8 at 24).

Under 20 C.F.R. § 416.927(e)(2)(i):

State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security Disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence. . . .

"[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.'" *Smith,* 17 F.Supp.3d at 268, 2014 WL 1746054, at *6 (quoting *Barringer v. Comm'r of Soc. Sec.,* 358 F.Supp.2d 67, 79 (N.D.N.Y.2005). "This is particularly so where the consultant directly examines the applicant." *Id.* (citing 20 C.F.R. § 416.927(c)(1)) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.")).

■ Here, Dr. Persaud personally examined Plaintiff and rendered an opinion as to Plaintiff's functional limitations. Yet, the ALJ stated that "[a]s for the opinion evidence, there is no [treating] or consulting medical source opinion reporting that the claimant is disabled." (Tr. 21). The ALJ made this statement despite summarizing Dr. Persaud's June 14, 2011 opinion earlier in his decision. (Tr. 20). The fact that Dr. Persaud did not conclude that Plaintiff was disabled does not mean that the ALJ should not have assigned some

weight to the doctor's opinion. *See Snell,* 177 F.3d at 133 ("[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability."). In addition, Dr. Persaud's opinion is supported by other medical evidence in the record noting Plaintiff's limitations in prolonged standing, twisting, and walking on uneven surfaces. (*See* Tr. 329–30, 424–25, 333, 397).

The Commissioner again makes a *post hoc* argument that Dr. Persaud's opinion is incorporated into the ALJ's RFC limitation to light work, and notes that the ALJ did discuss Dr. Persaud's opinion. (Dkt. 10–1 at 22). However, a reviewer of the ALJ's decision cannot determine what, if any, weight was assigned to not only Dr. Persaud's opinion, but to any doctor's opinion. The ALJ assigned "great weight" to the opinion of the ME, but did not assign weight to *any other physician* who provided an opinion for the medical record. This is a reversible error. *See Hill v. Astrue,* No. 1:11–CV–0505(MAT), 2013 WL 5472036, at *12 (W.D.N.Y. Sept. 30, 2013) (finding that ALJ's failure to discuss opinion of consultative psychologist or explain the weight accorded to it was an error requiring remand).

As a result, this case is remanded for reconsideration of Dr. Persaud's opinions related to Plaintiff's functional limitations (Tr. 385), and for a written explanation as to any assigned weight.

### C. The ALJ's credibility analysis is not supported by substantial evidence.

Plaintiff argues that the ALJ failed to properly consider Plaintiff's allegations of pain. (Dkt. 8 at 27). Specifically, Plaintiff claims that the ALJ: (1) "misconstrued Plaintiff's reactions to medications and SIJ injections;" (2) failed to consider that "the entirety of the record . . . portrays a much more complex situation regarding physical therapy" than the ALJ provided for; (3) did not consider Plaintiff's strong work history and work ethic; and (4) failed to give proper consideration to Plaintiff's claims that sitting more than 45 minutes aggravated his back pain. (Dkt. 8 at 27–31).

The Social Security regulations require a two-step process for the ALJ to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with the medical and other objective evidence. *Brownell v. Comm'r of Soc. Sec.,* No. 1:05–CV–0588 (NPM/VEB), 2009 WL 5214948, at *3 (N.D.N.Y. Nov. 23, 2009). First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

■■■ In the instant case, the ALJ properly applied the two step analysis. First, the ALJ found that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms. (Tr. 20). Second, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . .

residual functional capacity assessment." (*Id.*).

In evaluating a Plaintiffs credibility, the ALJ must consider several factors, including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Stewart v. Barnhart,* 235 F.R.D. 579, 590 (W.D.N.Y.2006); *see* 20 C.F.R. § 404.1529(c).

 Here, the ALJ addressed adverse side effects to medication, treatments, special measures taken, and activities of daily living. (Tr. 21). As a result, the ALJ did not commit a legal error in evaluating Plaintiff's credibility. However, the ALJ did not accurately construe Plaintiff's testimony or the medical evidence of record in evaluating Plaintiffs credibility, which means that the ALJ's decision is not supported by substantial evidence.

For example, the ALJ states that "there is no evidence of adverse side effects to medication." (Tr. 21). Yet Plaintiff testified that he stopped taking narcotic medication because it made him sick and caused him to be angry, and Dr. Hinterberger noted in his medical records that he changed Plaintiff's pain medication prescriptions due to the various medications' side effects. (Tr. 48, 335–37).

 Additionally, the ALJ failed to discuss Plaintiff's strong work history. "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983); *see also Ryan,* 5 F.Supp.3d at 513, 2014 WL 1089041, at *17 (finding the ALJ committed error in failing to consider the plaintiff's fifteen year work history when assessing the plaintiff's credibility); 20 C.F.R. 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record. . . ."). Plaintiff consistently earned work credits from 1983 through 2010, and after injuring his back made an unsuccessful attempt to return to work. (Tr. 212–13, 333–36).

An ALJ " 'cannot simply selectively choose evidence in the record that supports his conclusions' . . . [or] mis-characterize a claimant's testimony or afford inordinate weight to a single factor. . . ." *Meadors v. Astrue,* 370 Fed.Appx. 179, 185 n. 2 (2d Cir.2010) (quoting *Gecevic v. Sec'y of Health and Human Servs.,* 882 F.Supp. 278, 286 (E.D.N.Y.1995)).

Accordingly, the ALJ's decision regarding Plaintiff's credibility is not supported by substantial evidence and should also be remanded on that basis. On remand, the ALJ should, among other things, consider Plaintiff's testimony in light of the medical opinions of Dr. Hinterberger and Dr. Persaud, if they are afforded weight. The ALJ should also address what weight, if any, to give to Plaintiff's work history.

**D. The ALJ's determination that there are other jobs in the national economy for Plaintiff to perform is not supported by substantial evidence.**

Plaintiff argues that the ALJ's determination that Plaintiff could perform the representative jobs of examiner, ticketer, final assembler, electronic worker, and cloth folder is not supported by substantial evidence. (Dkt. 8 at 32). Where a VE is presented with a hypothetical question that incorporates an RFC that is unsupported by substantial evidence, that VE testimony cannot serve as substantial evidence to support an ALJ's determination. *De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 934 (2d Cir.1984). As a result, the ALJ's reliance on the VE to find that there are jobs in the national economy for Plaintiff to perform was made in error. On remand, the Commissioner must re-evaluate whether there are jobs in the national economy for Plaintiff to perform.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is denied, Plaintiff's motion for judgment on the pleadings (Dkt. 7) is granted in part, and this matter is remanded for further administrative proceedings consistent with this Decision and Order.

SO ORDERED.

