ELIZABETH A. WOLFORD United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Rosa Maria Phakkhonkham ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 6; Dkt. 9). For the reasons discussed below, Plaintiff's motion *373 (Dkt. 6) is granted in part, the Commissioner's motion (Dkt. 9) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed her application for DIB on May 1, 2014. (Dkt. 4 at 16, 94).[1] Thereafter, on May 5, 2014, Plaintiff protectively filed an application for SSI. (Id. at 16, 180-81). In her applications, Plaintiff alleged disability beginning May 10, 2013, due to right shoulder injury and weakness; left shoulder injury; carpal tunnel syndrome in her right and left wrists; anxiety; and depression. (Id. at 16, 94, 180-81). Plaintiff's applications were initially denied on September 12, 2014. (Id. at 105-110). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Lynette Gohr in Buffalo, New York, on February 13, 2017. (Id. at 34-80). Plaintiff appeared with her attorney and testified. (Id. ). At the hearing, Plaintiff's disability onset date was amended to June 4, 2013. (Id. at 38). On March 23, 2017, the ALJ issued an unfavorable decision. (Id. at 13-28). Plaintiff requested Appeals Council review; her request was denied on November 27, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 6-8). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York, 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe"
*374 within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last meets the insured status requirements of the Act on December 31, 2018. (Dkt. 4 at 18). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 10, 2013, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of bilateral carpal tunnel syndrome, bilateral shoulder rotator cuff tendinopathy - status post surgeries, and degenerative disc disease of the cervical spine. (Id. at 19). The ALJ further found that Plaintiff's medically determinable impairments of depression and anxiety were non-severe. (Id. at 19-21).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 21). The ALJ particularly considered the criteria of Listings 1.02B and 12.04 in reaching her conclusion, as well as the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (Id. at 21, 25-26).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), because Plaintiff:
is able to lift and/or carry fifteen pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an *375 eight-hour workday, and sit for six hours in an eight-hour workday. The claimant is occasionally able to climb ladders, ropes, and scaffolds, and she is occasionally able to crawl. In addition, the claimant is occasionally able to reach overhead with her bilateral upper extremities, and she is frequently able to, but not constantly, engage in fine and gross manipulation with her bilateral upper extremities.
(Id. at 22). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a customer order clerk. (Id. at 26).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cafeteria attendant, information clerk, and office helper. (Id. at 26-27). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 28).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ's conclusion that Plaintiffs anxiety and depression were non-severe impairments was error, because the ALJ did not consider vocational records from ACCES-VR[2] and (2) the assessed RFC is not supported by substantial evidence. (Dkt. 6-1 at 15-28).
A. Consideration of Plaintiff's Vocational Records and Assessment of her Mental Impairments
In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:
the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Pike v. Colvin, No. 14-CV-159-JTC, 2015 WL 1280484, at *5, 2015 U.S. Dist. LEXIS 35143, at *11 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. Hall v. Colvin, 37 F.Supp.3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) ). "While [a vocational rehabilitation counselor] is not an 'acceptable medical source' under the regulations, [their] opinion must still be evaluated, although it is not entitled to the same weight as a physician's opinion." Manni v. Colvin, No. 15-CV-1140, 2017 WL 1066667, at *9, 2017 U.S. Dist. LEXIS 40000, at *27-28 (N.D.N.Y. Mar. 20, 2017).
The ALJ found that Plaintiff's alleged anxiety and depression were non-severe impairments because the record contained "no significant evidence of mental work-related functional limitations." (Dkt. 4 at 19). In arriving at this determination, *376 the ALJ considered: records from Northwest Community Health Center from July 2013 to September 2013, where Plaintiff underwent outpatient counseling and psychotropic medication management, but discharged against medical advice; an August 2014 consultative psychological examination by Susan Santarpia, Ph.D., who assigned Plaintiff no mental work-related function limitations, other than a mild limitation in performing complex tasks independently; the opinion of a reviewing psychological consultant, Dr. Kamin, who opined that Plaintiff had no severe mental impairments ; and records from a consultative internal medicine examiner, Hongbiao Liu, M.D., who stated that Plaintiff likes to read, and is able to cook twice per week, clean the house, do laundry, and go shopping. (Id. at 19-21). The ALJ did not discuss information contained in Plaintiff's vocational records from ACCES-VR; rather, the vocational records are mentioned only in passing. (Id. at 22 (Plaintiff testified that she "started mental health counseling about two months earlier, and that she has been working with Access VR," and that she "attended a few workshops"); id. at 23 ("In September 2014, the claimant was deemed eligible for vocational rehabilitation services from ACCES-VR, and the vocational rehabilitation reports indicate that the claimant generally looked for light-duty work") ).
Plaintiff began visiting ACCES-VR on September 15, 2014, originally to address impairments caused by shoulder surgery. (Id. at 422). Plaintiff's Vocational Rehabilitation Counselor was Brigid Howard. (Id. at 434). Plaintiff eventually began vocational training at the Statler Center in early 2015. (Id. at 450-51, 456). Initially, Plaintiff had difficulty processing the material being covered. (Id. at 459). In early March 2015, Chaunci Hinton, an Assistant Director at Statler, corresponded with Ms. Howard, and noted that Plaintiff would benefit from treating with a mental health specialist because "she certainly needs an outlet." (Id. at 460). Ms. Hinton also recounted that, during a conversation with Plaintiff:
she broke down again, and started crying. She stated that she has really severe anxiety and that a lot of what we ask her to do; speaking in public, testing, timing her performance, really brings it out in her. She said even driving here in the morning gives her anxiety.
(Id. at 462); see also id. ("[Plaintiff] wanted to talk to me this morning.... She almost started crying immediately, which got me really worried. What I gathered out [of] the conversation was that [Plaintiff] was really emotional and that she also gets really annoyed with her fellow students often during class"). In August 2015, Krystle Januale, a Job Developer at Statler Center, reported that Plaintiff:
informed her that 'she feels very uncomfortable going to the Statler Center. [I] asked if she could be more specific and she said she gets "vibes" and "picks up on things." She can't really explain but has something like [p]sychic abilities..., She also stated that she has a lot of anxiety which interferes with her life.'
(Id. at 467); see also id. at 468 ("[Plaintiff] sounded sad over the phone, she said everything was [okay]. [Plaintiff] said she has been "[out] of it lately" and is now trying to get things back in order. She was not aware that her voicemail box is full and stated she will [begin] to delete old messages."). In December 2015, Ms. Januale reported that Plaintiff called her very upset, and reported that "during her one day experience at the VA hospital, that she got a vibe that they were lying to her. She began to explain how she 'feels things' and that she cannot help it. She wanted a copy *377 of all information that was recorded during her externship." (Id. at 476). When Ms. Januale suggested that Plaintiff speak to a counselor about these feelings, Plaintiff stated, "I don't know, I just don't think anything can help. No medicine or [c]ounseling can help me ... I'm basically screwed." (Id. ). In January 2016, Plaintiff's vocational training was placed in "services interrupted" until she could "better manage her emotions." (Id. at 477).
At the administrative hearing, Plaintiff testified that she had "problems" completing the ACCES-VR training, because she "had trouble with the math, and that gave me a lot of anxiety, and then they got at me that-was going on." (Id. at 54). Plaintiff further testified that the training made her "anxious" (id. at 55), and that her vocational counselor said that she was not ready to work, because she needed mental health counseling (id. at 43, 63).
The Court recognizes that Plaintiff's vocational records are not afforded any special weight, see Manni, 2017 WL 1066667, at *9, 2017 U.S. Dist. LEXIS 40000, at *27-28, and that Plaintiff's subjective complaints of an impairment are not sufficient to establish a disability, see Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009). However, the records from ACCES-VR are replete with information, including complaints from Plaintiff and observations from vocational professionals, relating to Plaintiff's mental health and her ability to process information and work. Indeed, as explained above, the ACCES-VR records show that Plaintiff was unsuccessful at learning new skills or dealing with work-related stress, and eventually had to stop services due to her alleged anxiety. The ALJ's complete failure to discuss these records-which are favorable to Plaintiff-was error. The ALJ was required to explain her reasons for failing to credit the information contained in Plaintiff's vocational records relating to Plaintiff's mental health issues. See Manni, 2017 WL 1066667, at *9, 2017 U.S. Dist. LEXIS 40000, at *27-28 (ALJ properly considered vocational counselor's opinion, and noted that it was inconsistent with other opinions in the record and not supported by clinical findings or medical evidence).
Further, the ALJ's determination that Plaintiff's anxiety and depression are non-severe impairments was based at least in part on Plaintiff's lack of medical treatment for these conditions. (Id. at 19). In the written determination, the ALJ noted that Plaintiff discharged from treatment at Northwest Community Mental Health Center "against medical advice." (Id. ). "When a claimant suffers from mental illness, faulting him or her for failing to pursue mental health treatment is a questionable practice." Gonzalez v. Berryhill, Civ. No. 3:17CV01385(SALM), 2018 WL 3956495, at *5, 2018 U.S. Dist. LEXIS 139642, at *13 (D. Conn. Aug. 17, 2018) (internal quotations and citation omitted); see also Henley v. Berryhill , No. 17-CV-445-FPG, 2018 WL 3866670, at *4, 2018 U.S. Dist. LEXIS 138194, at *11 (W.D.N.Y. Aug. 15, 2018) ("a person who suffers from psychological and emotional difficulties may lack the rationality to decide whether to continue treatment or medication") (internal quotations and citation omitted).
The record in this case (particularly the ACCES-VR records) is replete with references to Plaintiff's mental health issues, as well as her unwillingness to recognize her condition and to seek treatment. (See Dkt. 4 at 424 ("[Plaintiff] has ... difficulty managing anxiety symptoms and was not benefited from treating with [mental health] Counselor ..."); id. at 434 ("[t]o help manage [mental health] symptoms [Plaintiff] was encouraged to contact Joe Stankovich to discuss current groups he is holding");
*378 id. at 441 (Plaintiff "[h]as an [appointment] with Northwest Behavioral Health....Has not seen [them] in sometime but scheduled to assist with managing anxiety [and] depression symptoms. Tearful throughout meeting."); id. at 450 ("[Plaintiff] was experiencing exacerbation of [mental health] symptoms - [d]epression and [a]nxiety and has reengaged with [mental health] [treatment] and feeling better, although still refusing psychiatric medications."); id. at 461 ("[Plaintiff's] counselor has suggested medication to help her and she has refused...."); id. at 470 ("[Plaintiff] also reports her son is her support, denies she would benefit from counseling."); id. at 475 ("[Plaintiff] also stated that she tried going to the Counseling Office she previously went to but felt they weren't treating her fairly. She mentioned they were asking a lot of questions and making her feel like she didn't really need [a] [c]ounselor or didn't believe she needed it."); id. at 477 ("[Plaintiff] continued to struggle with difficulty managing [m]ental [h]ealth symptoms and is still refusing [m]ental [h]ealth treatment/psychiatric medications."). The ALJ's failure to take into account Plaintiff's mental health issues in assessing her failure to follow through with treatment was further error. See Crocco v. Berryhill, No. 15-CV-6308 (MKB), 2017 WL 1097082, at *17 n.30, 2017 U.S. Dist. LEXIS 42325, at *53 n.30 (E.D.N.Y. Mar. 23, 2017) ("It is improper to fault a claimant for failing to seek medical treatment without considering the reasons the Plaintiff failed to pursue treatment").
In sum, the ALJ failed to address Plaintiff's ACCES-VR records. These vocational records contain information that have a direct bearing on, and are highly relevant to, Plaintiff's ability to work. Because these records were not addressed by the ALJ, the Court cannot conclude that his determination that Plaintiff's mental impairments were non-severe is supported by substantial evidence. On remand, the ALJ is directed to address the information contained in these records, as well as consider whether Plaintiff's lack of treatment, and failure to follow through on treatment, resulted from her alleged mental health condition. See Simpson v. Colvin, No. 6:15-CV-06244 EAW, 2016 WL 4491628, at *15, 2016 U.S. Dist. LEXIS 114192, at *44 (W.D.N.Y. Aug. 25, 2016) ("On remand, the Commissioner's assessment of Plaintiff's credibility must take into account all relevant factors, including the difficulties posed by Plaintiff's mental health impairments").
The Court is not persuaded by Defendant's argument that remand is not required in this instance, because "[s]tep two is designed as a threshold issue to determine if proceeding to the other steps of the evaluation process is necessary," and "since the ALJ proceeded with the rest of the analysis, it is moot whether or not additional severe impairments could have been found, as long as she considered all impairments when formulating the RFC." (Dkt. 9-1 at 14). In particular, the Court notes that Defendant does not point to any specific portions of the RFC assessment where Plaintiff's alleged mental health conditions were considered.
"An error at step two-either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe-can be harmless error if the ALJ continues the analysis and considers all impairments in [his] RFC determination." Sech v. Comm'r of Soc. Sec., No. 7:13-CV-1356 GLS, 2015 WL 1447125, at *3, 2015 U.S. Dist. LEXIS 39823, at *8 (N.D.N.Y. Mar. 30, 2015). However, "[r]emand is required if the ALJ fails to account for the claimant's nonsevere impairments when determining her RFC."
*379 Zochios v. Berryhill, No. 17-CV-6207-FPG, 2018 WL 1835451, at *3, 2018 U.S. Dist. LEXIS 65449, at *7 (W.D.N.Y. Apr. 18, 2018).
The ALJ's decision in this case does state "[a]lthough I have determined that some of the claimant's impairments are non-severe, the limiting effects of all the claimant's impairments, even those that are not severe, were considered in determining the claimant's residual functional capacity assessed below." (Dkt. 4 at 19). However, despite this contention, there is nothing in the written determination that leads the Court to conclude that the ALJ meaningfully considered Plaintiff's alleged mental health conditions in the remaining analysis. Indeed, all of the discussion relating to the assessment of Plaintiff's residual functional capacity focuses on Plaintiffs physical, rather than mental, impairments. Accordingly, the ALJ's failure to address the information contained in the ACCES-VR records was not harmless in this instance. See Zochios, 2018 WL 1835451, at *4, 2018 U.S. Dist. LEXIS 65449, at *9 (although ALJ's step two conclusion contained "boilerplate language" that the RFC accounted for the plaintiff's mental limitations, remand was required, where "the ALJ's RFC analysis [did] not mention [Plaintiff's] anxiety or bipolar disorders and the RFC lack[ed] any related mental limitations").
B. Plaintiffs Remaining Argument
As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. See, e.g., Bell v. Colvin, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin, No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted, 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

ACCES-VR provides adult career and continuing education services.