ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Tammy Sue Wynn ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to *343 Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 15), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 10) is denied.
BACKGROUND
Plaintiff protectively filed her application for SSI on February 11, 2014. (Dkt. 7 at 14, 138-143).[1] In her application, Plaintiff alleged disability beginning August 1, 2010, due to depression, panic disorder, acid reflux, fast heart rate, a small hole on her heart, and pelvic issues. (Id. at 65). Plaintiff's application was initially denied on May 14, 2014. (Id. at 75-77). At Plaintiff's request, a video hearing was held on June 8, 2016, before administrative law judge ("ALJ") P.H. Jung, who presided over the hearing from Kansas City, Missouri. (Id. at 40-63). Plaintiff and her attorney appeared in Buffalo, New York. (Id. ). On June 23, 2016, the ALJ issued an unfavorable decision. (Id. at 11-27). Plaintiff requested Appeals Council review; her request was denied on October 23, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 5-7). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Bowen v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 416.920(c). If the *344 claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 11, 2014, the application date. (Dkt. 7 at 16).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of: depression, anxiety disorder, gastrointestinal disorder /gastroesophageal reflux disease, headaches, obstructive sleep apnea, tachycardia, hypertension, asthma, and chronic obstructive pulmonary disease. (Id. ). The ALJ further found that other impairments alleged by Plaintiff, including but not limited to pelvic pain and keratosis, seborrheic, were non-severe. (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 17). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching her conclusion. (Id. at 17-18).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b), with the limitations that Plaintiff can:
lift and carry up to 10 pounds frequently and 20 pounds occasionally, stand and/or walk up to 6 hours in an 8 hour workday, and sit for up to 6 hours in an 8 hour workday; occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She should avoid frequent exposure to extreme heat, wetness, humidity, vibration, fumes, odors[,] dusts, gases, poor ventilation, hazards, machinery and heights. Noise level should be limited to level 3, moderate such as an office level and no flashing lights. [Plaintiff] is further limited to simple, routine and repetitive *345 tasks with no more than occasional interaction with supervisors, coworkers, or the general public.
(Id. at 18-19). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 25).
At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of retail marker, electronics subassembler, and small parts assembler. (Id. at 26-27). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 27).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
Plaintiff asks the Court to reverse, or in the alternative, to remand this matter to the Commissioner, arguing that (1) the ALJ improperly addressed and evaluated medical opinions, including the opinion of Emilia M. Banse, FPMHNP, a nurse practitioner (hereinafter, "NP Banse"), and failed to develop the record; (2) the RFC finding was not supported by substantial evidence, because the ALJ did not adopt medical opinions in the record and failed to develop the record; and (3) the ALJ failed to properly assess the credibility of Plaintiff's subjective complaints. (Dkt. 10-1 at 17-30). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.
A. Evaluation of NP Banse's July 2, 2014 Opinion
In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:
the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Pike v. Colvin , No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. Hall v. Colvin , 37 F.Supp.3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) ).
In her motion papers, Plaintiff states that the ALJ improperly rejected the opinions of Christine Ransom, Ph.D.; J. Straussner, the State Agency psychologist; Abrar Siddiqui, M.D., a consultative physician; and NP Banse. However, Plaintiff makes argument only as to NP Banse. (Dkt. 10-1 at 18). Specifically, Plaintiff argues that the ALJ improperly afforded NP Banse's opinion little weight without providing adequate reasons. (Id. at 19).
Under the Commissioner's regulations applicable to Plaintiff's claim, nurse practitioners are not considered "acceptable medical sources," and their opinions are therefore not "entitled to any particular weight[.]" Wider v. Colvin , 245 F.Supp.3d 381, 389 (E.D.N.Y. 2017) (quotations omitted). Nevertheless, an ALJ
*346 should consider evidence from "other sources," such as nurse practitioners, on important issues like the severity of an impairment and any related functional effects. See SSR 06-3p, 2006 WL 2329939, 2006 SSR LEXIS 5, (S.S.A.2006) ; Glena v. Colvin , No. 1:15-CV-00510(MAT), 2018 WL 739096, at *3, 2018 U.S. Dist. LEXIS 19833, at *8-9 (W.D.N.Y. Feb. 6, 2018) ("Nurse practitioners are defined as 'other sources' under the Regulations; they do not constitute 'acceptable medical sources'.... Nevertheless, SSR 06-3p recognizes that 'other source' opinions are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.") (internal quotation omitted). An ALJ may not disregard opinion evidence from a nurse practitioner or "other source" solely because it was not authored by an acceptable medical source. See Canales v. Comm'r of Soc. Sec. , 698 F.Supp.2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record").
Plaintiff began treating with NP Banse in May 2014. (Dkt. 7 at 739). NP Banse assessed Plaintiff with major depressive disorder, panic disorder, and nicotine dependence. (Id. at 740, 744, 747, 751, 755). During the course of this treatment, NP Banse consistently assessed Plaintiff's GAF as 61. (Id. at 740, 744, 747, 751, 755). Another nurse practitioner, Angela Roche (hereinafter, "NP Roche"), assessed Plaintiff's GAF as 80 on several occasions. (Id. at 758, 761, 765, 768, 771, 774, 778, 782). On July 2, 2014, NP Banse, under the heading "Treatment Plan and Recommendations" in her visit notes, wrote "unable to work due to severe anxiety and depression." (Id. at 747). NP Banse did not explain how or why she formulated that opinion. Further, there is no discussion of Plaintiff's mental limitations as applied to her work-related limitations anywhere in NP Banse's treatment notes supporting her opinion.
The ALJ considered NP Banse's July 2, 2014 opinion that Plaintiff was unable to work due to severe anxiety and depression and assigned it little weight. (Dkt. 7 at 25). The ALJ explained that NP Banse's July 2, 2014 opinion was inconsistent with Plaintiff's GAF scores between May 19, 2014, and August 21, 2015, which ranged from 61 to 80. (Id. ). The ALJ cited to specific portions of the record containing Plaintiff's GAF scores, and noted that many of the GAF scores were assessed by NP Banse herself. (Id. ). The ALJ also explained that NP Banse's statement that Plaintiff was unable to work was an opinion on the ultimate issue of disability, an issue that is ultimately reserved to the Commissioner. (Id. ).
Under the circumstances of this case, the ALJ's assignment of "little weight" to NP Banse's opinion was proper. Inconsistency can constitute a good reason for rejecting a medical opinion. See Saxon v. Astrue , 781 F.Supp.2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given."). As noted by the ALJ, the opinion is inconsistent with Plaintiff's GAF scores, some of which were assigned by NP Banse herself.
Further, the Court finds that the ALJ's assignment of "little weight" to NP Banse's July 2, 2014 opinion was reasonable. The opinion appears once in several pages of notes and is not accompanied by any supporting medical data. In other words, Nurse Banse's opinion, in any light, is not an adequate functional assessment. Likewise, the July 2, 2014 opinion is contradicted by NP Banse's own notes. Plaintiff *347 is correct that NP Banse's treatment notes contain Plaintiff's subjective complaints of depression and anxiety, and NP Banse's opinion that Plaintiff appeared depressed at their meetings. (Dkt. 7 at 739-56). However, NP Banse's objective exams revealed that Plaintiff did not display mania or suspiciousness; had fair eye contact; had normal thought processes; experienced no delusions, hallucinations, obsessions, preoccupations or somatic thoughts; was alert and oriented; had intact memory, insight, and judgment; and had only decreased attention span and concentration. (Id. at 740-56). These relatively mild objective findings are at odds with NP Banse's opinion that Plaintiff is unable to work.
Plaintiff argues that the ALJ did not specifically consider the six factors she was required to consider before affording NP Banse's opinion little weight. (Dkt. 10-1 at 20). However, as noted above, "[a]n ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. Hall , 37 F.Supp.3d at 625 (quoting Halloran , 362 F.3d at 32 ). It is abundantly clear from the written determination that the ALJ considered these factors, particularly because the ALJ cited to specific portions of the medical record, discussed specific tests NP Banse performed, compared NP Banse's evaluations to evaluations done by other medical professionals, and recognized that NP Banse was Plaintiff's mental health nurse practitioner. (Dkt. 7 at 25).
The ALJ in this case thoroughly discussed and considered NP Banse's opinion, and her reasons for affording it limited weight were proper and well-supported by the record. Under these circumstances, the Court finds no error in the ALJ's decision. See Saxon v. Astrue , 781 F.Supp.2d 92, 104 (N.D.N.Y. 2011) (noting that "the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources.' " as long as she "address[es] and discuss[es] the opinion").
B. RFC Assessment
Plaintiff next argues that the RFC is not supported by substantial evidence because the ALJ improperly assigned "little weight" to the medical opinions in the record, and thus did not rely on any medical opinion in formulating the RFC. (Dkt. 10-1 at 22-28).
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill , No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 200302, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is *348 not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
The ALJ's written determination includes an analysis of all the medical opinions in the record, including those from psychologist Straussner, Dr. Ransom, Dr. Siddiqui, and NP Banse. (Dkt. 7 at 24-25). The ALJ explained that psychologist Straussner and Dr. Ransom both assessed Plaintiff as needing few work-related limitations and opined that Plaintiff's mental impairment was not severe. (Id. ). The ALJ assigned the opinions of psychologist Straussner and Dr. Ransom "little weight," because "evidence received at the hearing level establishes that the claimant's medically determinable mental impairments did cause more than a minimal limitation in her ability to perform basic work activities." (Id. at 24). Because the ALJ discussed evidence received at the hearing in the written determination (see id. at 19-22), it is clear that the opinions of psychologist Straussner and Dr. Ransom conflicted with that evidence. In other words, the ALJ found that Plaintiff had at least some mental impairments and corresponding functional limitations beyond those assessed by psychologist Straussner and Dr. Ransom.
The ALJ next discussed the opinion of Dr. Siddiqui, who offered a fair prognosis and found no limitations in Plaintiff's ability to sit, stand, climb, push, pull or carry heavy objects. (Id. at 24-25). The ALJ began her analysis by noting that Dr. Siddiqui was an examining physician, rather than a treating physician, and therefore his opinion was not entitled to controlling weight or great deference. (Id. at 25). The ALJ then explained that the objective evidence in the record, which was summarized in detail in the written determination, showed that Plaintiff did in fact have severe impairments that cause some limitations in her functional ability. (Id. ). Based on the conflict between the objective medical evidence and Dr. Siddiqui's opinion, the ALJ assigned the opinion "little weight." (Id. ). Finally, as explained in greater detail at Section (II)(A), above, the ALJ assigned "little weight" to the opinion of NP Banse, because her opinion that Plaintiff was unable to work conflicted with objective medical evidence in the record. (Id. at 25).
The Court finds that the ALJ properly and adequately discussed her reasons for assigning "little weight" to the medical opinions in the record. The Court further notes that, had the ALJ assigned greater weight to the opinions of psychologist Straussner, Dr. Ransom, and Dr. Siddiqui, the RFC assessment would have included fewer mental and physical work-related limitations than it does currently.
Plaintiff argues that because the ALJ assigned "little weight" to the medical opinions in the record, she "created and widened an evidentiary gap" in the record and therefore had to rely on her own lay opinion in assessing an RFC. (Id. at 22). As noted above, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision." Matta , 508 F. App'x at 56. "Simply because the ALJ afford[s] no single opinion controlling weight does not mean ... that she substitute[s] her own expertise of the medical proof for medical opinion." Currie v. Comm'r of Soc. Sec. , No. 17-CV-602(MAT), 2018 WL 5023606, at *3, 2018 U.S. Dist. LEXIS 178591, at *11 (W.D.N.Y. Oct. 17, 2018). Rather. "[w]hat is required is that the ALJ explain the bases for [her] findings with sufficient specificity to permit meaningful review." Sewar v. Berryhill , No. 17-CV-6211L, 2018 WL 3569934, at *2, 2018 U.S. Dist. LEXIS 124602, at *5 (W.D.N.Y. July 25, 2018).
*349 Here, the ALJ discussed four separate opinions relating to Plaintiff's work-related limitations. In other words, this is not a case where there is a complete absence of opinion evidence relating to Plaintiff's work-related limitations.
Further, the Court finds that the RFC is supported by the record in its entirety and the ALJ explained, in detail, the medical records and opinions informing the assessed RFC. (See Dkt. 7 at 19-25). For example, it is clear that the assessed limitations relating to Plaintiff's exposure to particular extreme elements, such as heat, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, hazards, machinery, and heights, as well as exposure to noise and flashing lights, are based on medical records assessing Plaintiff with a heart condition, reflux disease, anxiety, and Plaintiff's hearing testimony. (See Dkt. 7 at 20 (discussing Plaintiff's testimony that she has asthma and COPD exacerbated by exertional activity and performing household chores); id. (discussing medical records relating to Plaintiff's reflux disease); id. at 21 (discussing medical records relating to Plaintiff's asthma and pulmonary disease ); id. at 22 (discussing Plaintiff's history of abuse, which caused anxiety and depression) ).
Likewise, the limitations relating to Plaintiff's ability to perform simple routine tasks with no more than occasional interaction with supervisors, coworkers, or the general public, are in part supported by the medical opinions of Dr. Ransom. (See id. at 24 (discussing Dr. Ransom's opinion that Plaintiff would have "no difficultly" following and understanding simple directions and instructions, and could perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks, and "mild difficulty" performing complex tasks, relating adequately with others, and appropriately dealing with stress) ). Finally, limitations on carrying heavy objects, walking, and sitting; climbing ladders, ropes, scaffolds, ramps, and stairs; and balancing, stooping, kneeling, crouching, and crawling, are based on Dr. Siddiqui's opinion that Plaintiff did not have any physical limitations. (See id. at 25 (discussing Dr. Siddiqui's opinion that there were no limitations on Plaintiff's ability to sit, stand, climb, push, pull, or carry heavy objects) ).
Although the ALJ did not adopt the opinions of Dr. Ransom or Dr. Siddiqui in their entirety, she adequately explained her reasons for not doing so, and adjusted their opinions accordingly in formulating the RFC. In other words, it is clear to the Court how and why the ALJ arrived at the assessed RFC. See Dittmar v. Comm'r of Soc. Sec. , No. 1:16-CV-0404 (CFH), 2017 WL 2333836, at *5, 2017 U.S. Dist. LEXIS 81864, at *15 (N.D.N.Y. May 30, 2017) ("the ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings"); see also Hickman ex rel. M.A.H. v. Astrue , 728 F.Supp.2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.' ") (citation omitted) (alteration in original). Accordingly, the Court finds that the ALJ did not substitute her own judgment for a competent medical opinion, and she was not required to further develop the record. Plaintiff's motion on this point is denied.
C. Evaluation of Plaintiff's Credibility
Plaintiff's third argument is that the ALJ erred in assessing the credibility of her subjective complaints. (Dkt. 10-1 at 28-30). For the reasons set forth below, the *350 Court finds no error in the ALJ's credibility assessment.
The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." Whiting v. Astrue , No. CIV.A. 1:12-274, 2013 WL 427171, at *6, 2013 U.S. Dist. LEXIS 15109, at *22 (N.D.N.Y. Jan. 15, 2013), adopted , 2013 WL 427166, 2013 U.S. Dist. LEXIS 14944 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Perez v. Barnhart , 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).
In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. Meadors v. Astrue , 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce' " her symptoms. Id. (quoting 20 C.F.R. § 404.1529(c)(1) ). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Id.
In this case, the ALJ applied the two-step inquiry. (Dkt. 7 at 19). At the first step, she found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record...." (Dkt. 7 at 22). Accordingly, the ALJ assessed Plaintiff's credibility, and concluded that "there is ... very little objective evidence of record to support the alleged severity of the symptoms described by the claimant at the hearing, which diminishes her persuasiveness." (Id. at 22-23).
First, the ALJ found that "studies have failed to show any severe neurological, cardiac or lung abnormalities, and numerous neurological examinations have yielded grossly normal results without evidence of any significant neurological deficits," and that Plaintiffs treatment has been successful in controlling her allegedly disabling symptoms. (Id. at 23). Second, the ALJ considered that Plaintiff was not compliant with her medical care providers' instructions for cessation of tobacco usage, and that "continuing to smoke is contrary to the normal treatment regimen for an individual with serious respiratory problems, and suggests a possible unwillingness to do what is necessary to possibly improve her condition." (Id. ). Third, the ALJ noted that, while Plaintiff has been treated for depressive disorder and anxiety disorder, she "has not received the type of level of mental healthcare that one would associate with an individual totally disabled by mental health impairments," such as hospitalization or emergency room treatment. (Id. ). The ALJ noted that Plaintiff's "conservative treatment and the relatively benign objective evidence are not consistent with the severity of condition purported by the claimant." (Id. ). Finally, the ALJ found that "[o]verall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision, including the numerous normal psychiatric examinations and report that she has a boyfriend of 10 years, which suggests capacity to maintain long and meaningful relationships." (Id. at 24).
*351 Plaintiff contends that the ALJ's credibility assessment is based on "a misconstruction of the record." (Dkt. 10-1 at 28). Plaintiff cites to the ALJ's finding that Plaintiff was "non-compliant with CPAP," and argues that Plaintiff's compliance was on one occasion, and that she was later compliant. (Id. at 29). A review of the record and of the ALJ's written determination reveals that the ALJ did not mischaracterize the information in the record as it relates to Plaintiff's CPAP usage. Indeed, the operative report of the surgeon who performed Plaintiff's tonsillectomy, under "History and Indications," notes:
This is a patient with persistent tonsillitis.... She also has untreated sleep apnea and declines to use CPAP. The hope is that if we remove her tonsils the sleep apnea would be a bit better.
(See Dkt. 7 at 706). In other words, Plaintiff's contention that she was non-compliant on only one occasion is not what is reflected in the medical records. The Court finds that the ALJ's interpretation of the record as it relates to Plaintiff's CPAP machine usage is reasonable.
The ALJ also noted that Plaintiff had failed to comply with "her medical care providers' repeated instructions and counseling for cessation of tobacco usage" and that she had "not provided a good reason" for her failure to do so. (Id. at 23). This Court and others have acknowledged "the nature of nicotine addiction and the inherent difficulty of quitting smoking," and have found that, in light of these considerations, "an ALJ may not base a credibility determination solely on a failure to quit smoking." Feliciano v. Berryhill , No. 6:16-CV-06311 (MAT), 2017 WL 3537130, at *6, 2017 U.S. Dist. LEXIS 131582, at *18-19 (W.D.N.Y. Aug. 17, 2017). However, it is proper for an ALJ to consider whether a claimant attempted to comply with her physicians' instructions and made a meaningful attempt to quit smoking, regardless of the ultimate success of that endeavor. See id. In this case, the record does not show that Plaintiff meaningfully attempted to quit smoking, despite being repeatedly counseled to do so by her physicians. To the contrary, Plaintiff repeatedly told her physicians that she was not ready to quit smoking or that she was merely "thinking" about doing so. (See Dkt. 7 at 219, 221, 223, 268-269). Plaintiff's physicians pointed her to resources that could be used in ceasing to smoke, but she apparently did not follow-up on them, reporting that she was only "pre-contemplating smoking cessation." (Id. at 908, 912, 918). Under these circumstances, it was appropriate for the ALJ to conclude that Plaintiff had not complied with her physicians' instructions and that her failure to do so negatively impacted her credibility. See Monette v. Colvin , 654 F. App'x 516, 519 (2d Cir. 2016) (ALJ properly found claimant less than fully credible where he would not stop smoking marijuana to permit more effective treatment of his impairments, "as urged by his treating psychiatrist").
Accordingly, it was proper for the ALJ to consider Plaintiff's non-compliance in assessing her credibility. See Lee v. Colvin , No. 13-CV-1151-JTC, 2015 WL 3505791, at *6, 2015 U.S. Dist. LEXIS 71883, at *16 (W.D.N.Y. June 3, 2015) (an ALJ is permitted to "consider plaintiffs noncompliance with treatment as a factor weighing against [her] credibility"). While it is true that "[c]ourts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a questionable practice," see Cornell v. Astrue , No. 7:11-CV-1064 (GTS), 2013 WL 286279, at *8, 2013 U.S. Dist. LEXIS 9513, at *23 (N.D.N.Y. Jan. 24, 2013), nothing in the record suggests that Plaintiff's noncompliance in using her CPAP machine or *352 ceasing tobacco usage was connected to any alleged mental illness, nor does Plaintiff raise this argument.
The ALJ also correctly noted that Plaintiff had received only conservative treatment for her allegedly disabling impairments. "[A] claimant may be deemed 'less credible if the level or frequency of treatment is inconsistent with the level of complaints[.]' " Sickles v. Colvin , No. 12-CV-774 MAD/CFH, 2013 U.S. Dist. LEXIS 185566 at *23 (N.D.N.Y. Oct. 3, 2013) (quoting SSR 96-7p), adopted , 2014 WL 795978, 2014 U.S. Dist. LEXIS 25024 (N.D.N.Y. Feb. 27, 2014). Here, as the ALJ described in detail, the medical treatment undergone by Plaintiff was conservative, and not of the type or frequency one would expect for the numerous disabling impairments claimed by Plaintiff. (See Dkt. 7 at 23).
In sum, the Court finds no error in the ALJ's credibility assessment. The ALJ applied the two-step inquiry and set forth well-supported reasons for finding Plaintiff's subjective allegations less than fully credible. Plaintiff has not shown that remand on this basis is warranted.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.