ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Jennifer Marie Merkel ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 11), and Plaintiffs reply (Dkt. 13). For the reasons discussed below, Plaintiffs motion (Dkt. 8) is granted, the Commissioner's motion (Dkt. 11) is denied, and the case is remanded for calculation and payment of benefits.
BACKGROUND
Plaintiff protectively filed her applications for DIB and SSI on December 18, 2008. (Dkt. 6-14 at 5).[2] In her applications, Plaintiff alleged disability beginning August 15, 2007, due to a herniated disc, depression, carpal tunnel syndrome, nerve damage in her right knee, and tendonitis. (Id. at 5; Dkt. 6-6 at 6). Plaintiff's applications were initially denied on May 8, 2009. (Dkt. 6-14 at 5). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John Costello in Rochester, New York, on June 8, 2010. (Id. ). On August 19, 2010, the ALJ issued an unfavorable decision. (Id. ). Plaintiff requested Appeals Council review; her request was denied on November 4, 2011. (Id. ). Plaintiff thereafter appealed to the United States District Court for the Western District of New York, which remanded the case for a new hearing. (Id. ). Another hearing was held on March 4, 2013, before ALJ Costello. (Id. ). On April 22, 2013, the ALJ issued an unfavorable decision. (Id. ). Plaintiff requested Appeals Council review; her request was denied. (Id. ). Plaintiff again appealed her case to U.S. District Court which, by stipulation of the parties, remanded the case to the Commissioner for further proceedings on February 10, 2016. (Id. ). The Appeals Council thereafter issued an order dated February 24, 2016, vacating the prior decision and remanding the case. (Id. ). The Appeals Council also directed the ALJ: to give further consideration to treating and non-treating source opinions, including the opinions of Robert Capecci, M.D. and Kevitha *244 Finnity, Ph.D.; consider re contacting treating sources, obtaining consultative examinations, or enlisting the testimony on a medical expert; and further evaluate Plaintiff's subjective complaints. (Id. at 5-6).
A third hearing was held on October 13, 2016, in Rochester, New York, before ALJ Michael W. Devlin. (Id. at 6, 34-74). Plaintiff appeared with her attorney and testified. (Id. ). Also appearing and testifying were John Kwock, M.D., an impartial medical expert, and Peter A. Manzi, an impartial vocational expert. (Id. ). On April 17, 2017, the ALJ issued an unfavorable decision. (Id. at 2-24). The ALJ's written determination became the Commissioner's final decision. This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities *245 on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act through December 31, 2008. (Dkt. 6-14 at 8). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since August 15, 2007, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "history of herniated lumbar disc; right knee meniscus tears (status-post surgeries); right carpal tunnel syndrome ; migraine headaches; major depressive disorder ; generalized anxiety disorder ; and posttraumatic stress disorder (PTSD)." (Id. ). The ALJ further found that Plaintiff's medically determinable impairment of injury to her left hand was non-severe. (Id. at 8-9). With respect to Plaintiff's representation that she suffered from fibromyalgia, the ALJ concluded that this was not a medically determinable impairment. (Id. at 9).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. ). The ALJ particularly considered the criteria of Listings 1.02, 1.04, 12.04, 12.06, and 12.15 in reaching his conclusion. (Id. at 9-12).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the additional limitations that Plaintiff:
can lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk up to 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push/pull 10 pounds occasionally; be allowed to stand for 1-2 minutes after sitting for approximately 30 minutes and be allowed to sit for 1-2 minutes after standing for approximately 15 minutes; occasionally climb ramps/stairs, balance and stoop; never kneel, crouch, crawl or climb ladders/ropes/scaffolds; frequently handle/finger with the non-dominant right hand; understand, remember and carry out simple instructions and tasks; occasionally interact with coworkers and supervisors, with little to no contact with the general public; is able to work in a low stress work environment (i.e. no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in the work routine processes, etc.); and is able *246 to consistently maintain concentration and focus for up to two hours at a time.
(Id. at 12). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 22).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of table worker and addresser. (Id. at 23). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 24).
II. Reversal and Remand of This Matter for Calculation and Payment of Benefits is Appropriate
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ failed to follow the Appeals Council's directive to properly evaluate the opinion of Plaintiff's treating physician, Dr. Capecci; (2) the ALJ erred by relying on the testimony of Dr. Kwock, the medical expert, because he did not provide any functional limitations; and (3) the RFC is not based on any medical source opinion. (Dkt. 8-1 at 20-28). As noted by Defendant, Plaintiff's several arguments all principally challenge the ALJ's assessment of Dr. Capecci's and Dr. Kwock's opinions. (See Dkt. 11-1 at 27 ("Plaintiff's several arguments overlap into her principle argument that the ALJ's RFC assessment was erroneously based on the ALJ's faulty evaluation of medical opinion evidence, including Dr. Capecci's functional assessment and testimony from the medical expert Dr. Kwock") ). For the reasons set forth below, the Court agrees with Plaintiff, and finds that the ALJ erred in evaluating the opinion evidence of Dr. Capecci and Dr. Kwock. The Court further finds that, under the applicable regulations, the ALJ should have given controlling weight to the opinion of treating Dr. Capecci and that had he done so, a finding that Plaintiff was disabled necessarily would have followed. Accordingly, the Court remands this matter solely for the calculation and payment of benefits.
A. Evaluation of Opinion Evidence
Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Id. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" Scitney v. Colvin , 41 F.Supp.3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).
*247 Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2) ; see also Harris v. Colvin , 149 F.Supp.3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons' " for the weight given to a treating source opinion." (quoting Halloran , 362 F.3d at 32 ) ). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific ...." Harris , 149 F.Supp.3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran , 362 F.3d at 33.
Plaintiff began treating with Dr. Capecci, an orthopedist, in May 2010. (Dkt. 6-13 at 127). Dr. Capecci performed surgical procedures on Plaintiff's knees (see, e.g., id. at 103 (Dr. Capecci performed a diagnostic arthroscopy of the left knee on May 27, 2010); Dkt. 6-19 at 96-98 (Dr. Capecci performed an arthroscopy of the left knee and synvisc injection of the right knee on June 21, 2013) ), and therefore was very familiar with her impairments. On May 27, 2010, Dr. Capecci completed a Physical Residual Functional Capacity Questionnaire. (Dkt. 6-7 at 359). Dr. Capecci stated that Plaintiff's prognosis was "questionable." (Id. ). He opined that during a typical workday, Plaintiff's pain was severe enough to occasionally (meaning between six to thirty-three percent of the time) interfere with attention and concentration needed to perform simple work tasks. (Id. at 360). Dr. Capecci further opined that Plaintiff could tolerate moderate work stress, because her pain would "affect her perception and tolerance of stress." (Id. ). Dr. Capecci opined that Plaintiff could walk "0-1" city blocks without rest or severe pain; could sit for more than two hours at one time; and could stand for 10 minutes at one time. (Id. ). Dr. Capecci found that Plaintiff could frequently look down (sustained flexion of neck); turn her head to the right or left; look up; and hold her head in a static position. (Id. at 361). Plaintiff could never crouch/squat or climb ladders; rarely climb stairs; occasionally stoop (bend); and could frequently twist. (Id. ). Plaintiff did not have any limitations reaching, handling or fingering. (Id. ). Dr. Capecci indicated that Plaintiff's impairments produced "good days" and "bad days" and because of this, on average, Plaintiff would be absent from work "about four days per month." (Id. ).
In the written determination, the ALJ noted that he was "cognizant of the issues raised by the Appeals Council in its most recent order," and stated that he had "considered and weighed Dr. Capecci's ... entire [opinion]...." (Dkt. 6-14 at 22). In assessing Plaintiff's RFC, the ALJ assigned "some weight" to Dr. Capecci's opinion. (Id. at 20). Specifically, the ALJ found that Plaintiff "had some difficulty with prolonged standing/walking (requiring the ability to sit for 1-2 minutes after 15 minutes of standing/walking....)" (Id. ). This finding regarding Plaintiff's ability to stand and walk significantly diverges from Dr. Capecci's opinion regarding Plaintiff's ability to do these activities-while Dr. Capecci found that Plaintiff could walk only 0-1 city blocks and stand for 10 minutes at one time, the RFC finding requires Plaintiff to stand for 15 minutes at one *248 time, and to stand/walk for up to two hours in an 8 hour workday.[3] The ALJ adopted Dr. Capecci's opinion that Plaintiff could occasionally stoop, and had no significant restrictions involving cervical range of motion. (Id. ). The ALJ also agreed that Plaintiff can never climb ladders or crouch. (Id. ). Where Dr. Capecci opined that Plaintiff could "rarely" climb stairs, the ALJ found that Plaintiff could "occasionally" climb ramps and stairs. (Id. ). The ALJ rejected Dr. Capecci's opinion that Plaintiff had no limitations in handling and fingering, and assessed that Plaintiff could only frequently handle and finger with her right hand, due to her decreased right grip strength and dexterity. (Id. ). The ALJ acknowledged Dr. Capecci's opinion that Plaintiff would be absent from work about four days per month (see id. (Dr. Capecci "concluded [Plaintiff] would likely be absent from work about four days per month due to her impairments/treatment") ), but he did not discuss whether he agreed with or rejected that opinion, or how that opinion would affect Plaintiff's ability to retain employment.
The ALJ did not explain why he assessed lesser limitations than those identified by Dr. Capecci regarding Plaintiff's ability to stand, walk, and climb stairs and ramps; rather, he characterized his assessment of Plaintiff's ability to stand and walk as in agreement with Dr. Capecci's opinions. (See Dkt. 6-14 at 20 ("The undersigned assigns some weight to this opinion, agreeing that the claimant has some difficulty with prolonged standing/walking") ). However, as discussed above, a closer comparison of Dr. Capecci's opinion and the assessed RFC reveals significant differences which the ALJ failed to explain. The ALJ also failed entirely to explain why he did not credit Dr. Capecci's opinion that Plaintiff's impairments would cause her to be absent from work four days per month.
The Court finds that the ALJ's consideration of Dr. Capecci's opinion did not comport with the applicable regulations. While the RFC need not "perfectly correspond with any of the opinions of medical sources cited in his decision," see Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013), the ALJ is required to explain why he has not adopted certain medical opinions, particularly those given by a plaintiff's treating physician for important functions such as walking and standing, which may be very limited for someone like Plaintiff, who has had several knee surgeries. For example, an ALJ may decide not to give the opinion of a treating physician controlling weight if it is internally inconsistent, or if it is inconsistent with other medical evidence in the record. See Micheli v. Astrue , 501 F. App'x 26, 28-29 (2d Cir. 2012) (ALJ did not err in declining to afford controlling weight to treating physician, where the opinion was internally inconsistent and inconsistent with other evidence in the record).
Here, the ALJ offered no such rationale for not adopting Dr. Capecci's opinions relating to Plaintiff's ability to walk, stand, and climb stairs and ramps. While the written determination includes a thorough recitation of Plaintiff's treatment history for her knee pain (Dkt. 6-14 at 17-18), the majority of this history supports the opinion that Plaintiff is severely limited in walking and standing, in that Plaintiff continually complained of knee pain, and her impairments were serious enough to require multiple surgeries. In other words, it is not obvious to the Court what medical evidence in the written determination conflicts *249 with the opinion offered by Dr. Capecci regarding Plaintiff's ability to stand and walk.
Moreover, and particularly troublingly, the ALJ completely failed to discuss his assessment of Dr. Capecci's opinion that Plaintiff's impairments would cause her to be absent from work approximately four days per month. Dr. Capecci's assessment of Plaintiff's need to be absent from work is uncontradicted by any other medical evidence of record. In particular, the Court notes that the medical record amply demonstrates that Plaintiff suffers from multiple serious medical impairments, including migraine headaches, that could reasonably be expected to wax and wane in severity. Indeed, Dr. Capecci noted in his medical source statement that Plaintiff's impairments were "likely to produce 'good days' and 'bad days.' " (Dkt. 6-7 at 361). In addition, no other medical source contradicted Dr. Capecci's opinion that Plaintiff would need to be absent from work. To the contrary, consultative examiner Dr. Harbinder Toor's opinion is consistent with Dr. Capecci's opinion, inasmuch as he opined that Plaintiff's migraines were likely to interfere with her ability to maintain a routine. (See id. at 92).
Defendant contends that the ALJ did not ignore Dr. Capecci's opinion relating to Plaintiff's absences, but "simply chose not to adopt it." (Dkt. 11-1 at 31-32). Defendant argues that Dr. Capecci's opinion relating to Plaintiff's absences was an "equivocal guess" and the ALJ's decision not to adopt the opinion was proper, because the opinion conflicted with Dr. Capecci's own treatment notes, including that Plaintiff improved following surgery. (Id. at 32). There are several problems with this argument. First, the written determination does not contain any explanation as to why Dr. Capecci's opinion relating to Plaintiff's absences was not given controlling weight. While Defendant identifies some perceived inconsistencies in Dr. Capecci's opinion, these articulations are absent from the ALJ's opinion. Defendant's after-the-fact explanation as to why the ALJ rejected Dr. Capecci's opinion cannot serve as a substitute for the ALJ's findings. See Hall v. Colvin , 37 F.Supp.3d 614, 626 (W.D.N.Y. 2014) (rejecting Commissioner's attempt to justify the ALJ's failure to incorporate a treating physician's opinion into his RFC); see also Snell v. Apfel , 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's post hoc rationalizations for agency action).
Second, the written determination does not discuss, nor does Defendant identify, any evidence in the record contradicting Dr. Capecci's opinion relating to Plaintiff's need for absences. Rather, Defendant attempts to contradict Dr. Capecci's recommendation relating to Plaintiff's absences by pointing to treatment notes that Plaintiff improved following her surgeries. Like the ALJ, defense counsel is not a medical doctor, and cannot contradict the opinion of a treating physician without giving good reasons for doing so, such as reliance on another, conflicting acceptable medical opinion. See Greek v. Colvin , 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion"). As Plaintiff's treating orthopedist, Dr. Capecci had detailed, longitudinal knowledge of Plaintiff's history and impairments allowing him to accurately assess Plaintiff's functional limitations. See Clarke v. Colvin , No. 15-cv-354, 2017 WL 1215362, at *9, 2017 U.S. Dist. LEXIS 50527, at *28 (S.D.N.Y. Apr. 3, 2017) ("The regulations and case law concerning the treating physician rule emphasize *250 that a doctor who personally treats a claimant ... is likely to have a better understanding of her condition than a non-examining source"). That fact is particularly significant in this case, where the evidence showed that despite some initial improvement following her many knee surgeries, Plaintiff's condition ultimately worsened, a fact discussed by the ALJ in his written determination. (See Dkt. 6-14 at 17 (following surgery in February 2009, Plaintiff had some initial improvement in ambulation, but additional imaging revealed findings suggestive of additional tearing of the medial meniscus, and Plaintiff therefore underwent an additional surgery in July 2009); id. ("Though the claimant experienced right knee improvement following her July 2009 surgery, she began developing left knee pain at this time, with July 2009 imaging of this knee revealing a markedly abnormal medial meniscus...."); id. at 17-18 (although Plaintiff had some improvement following surgery in May 2010, as of June 2013, Plaintiff continued to experience bilateral knee pain, and was limited in ambulation due to pain; imaging revealed a left knee medial meniscal tear and right knee degenerative changes; left knee surgery was planned) ).
The ALJ's reliance on Dr. Kwock's testimony also does not justify his rejection of Dr. Capecci's opinion. In his decision, the ALJ assigned "significant weight" to the opinion of Dr. Kwock (an impartial medical expert enlisted by the ALJ to testify at the October 2016 hearing) that there was no evidence in the record to support that Plaintiff was not able to ambulate effectively or required the use of a cane. (Id. at 21-22). The ALJ acknowledged that generally the opinion of a non-examining source is entitled to less weight than a treating source; nevertheless, the ALJ assigned significant weight to Dr. Kwock's opinion of Plaintiff's functional limitations based on his specialization, his review of evidence in the record, his understanding of the social security disability programs; and because "it is well supported by the objective medical evidence already discussed in this decision." (Id. at 21-22).
There are several issues with the ALJ's assessment of Dr. Kwock's testimony. First, while Dr. Kwock's opinion regarding Plaintiff's ability to ambulate is at odds with Dr. Capecci's opinion that Plaintiff cannot walk more than one city block, Dr. Kwock did not address Dr. Capecci's opinion relating to Plaintiff's absences which, according to Dr. Capecci, would be about four days per month. Further, as discussed above, the Court is unable to identify what objective medical evidence contradicts the opinion of Dr. Capecci, as the medical history included in the written determination appears to support his opinion relating to Plaintiff's ability to ambulate and expected absences per month. Finally, the Court notes that Dr. Kwock did not offer any opinion relating to Plaintiff's functional limitations, such as for how long Plaintiff could stand, walk, or climb ramps and stairs. (Id. at 39-55). Accordingly, Dr. Kwock's opinion does not support the ALJ's decision to discount significant portions of Dr. Capecci's opinion, and particularly offers no basis for the ALJ's failure to credit Dr. Capecci's assessment of Plaintiff's need to be absent from work four days per month.
Dr. Capecci's opinion relating to Plaintiff's absences is well-supported by the record. Specifically, Dr. Capecci's opinion is consistent with the fact that Plaintiff's impairments are likely to produce "good days" and "bad days" (see Dkt. 6-7 at 361), as well as the host of other severe medical impairments Plaintiff suffers, including a herniated lumbar disc; right knee meniscus tears ; right carpal tunnel syndrome ; migraine headaches; major depressive disorder ; generalized anxiety disorder ; and *251 posttraumatic stress disorder (see Dkt. 6-14 at 8). Dr. Capecci's opinion regarding Plaintiff's need for absences from work is also consistent with and supported by the opinion of consultative examiner Dr. Toor, who stated that Plaintiff's migraines would interfere with her ability to maintain a routine. (See Dkt. 6-7 at 92). Under these circumstances, Dr. Capecci's opinion that Plaintiff would need to be absent from work four days per month was entitled to controlling weight pursuant to the treating physician rule. See Morris v. Berryhill , No. 1:16-CV-00973(MAT), 2018 WL 2979095, at *6, 2018 U.S. Dist. LEXIS 100186, at *20 (W.D.N.Y. June 14, 2018) (treating physician's opinion was well-supported and consistent with his long-term treatment of the plaintiff, and therefore it was entitled to controlling weight under the treating physician rule).
B. Remedy
Pursuant to 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision, with or without remanding for a rehearing. "The standard for directing a remand for calculation of benefits is met where the record persuasively demonstrates the claimant's disability, and there is no reason to conclude that additional evidence might support the Commissioner's claim that the claimant is not disabled." Destefano v. Berryhill , No. 6:17-cv-06651(MAT), 2018 WL 5489574, at *5, 2018 U.S. Dist. LEXIS 184903 at *17-18 (W.D.N.Y. Oct. 29, 2018) (internal citations omitted); see also Harbot v. Berryhill , No. 17-CV-6371L, 335 F.Supp.3d 382, 387-88, 2018 WL 6176633, at *4, 2018 U.S. Dist. LEXIS 200546, at *11-12 (W.D.N.Y. Nov. 27, 2018) ("Remand for the purpose of calculation of benefits is warranted where the record demonstrates the claimant's disability, and where there is no reason to conclude that there is additional evidence to support the Commissioner's claim that a claimant is not disabled."). Remand for calculation and payment of benefits is particularly appropriate where the well-supported opinion of a claimant's treating physician establishes disability. See Harbot , 335 F.Supp.3d at 387-88, 2018 WL 6176633 at *4, 2018 U.S. Dist. LEXIS 200546 at *12 (remanding for calculation and payment of benefits because the plaintiff's treating physicians opined that she would need "to miss at least two days of work per month" and would "frequently ... [be] unable to complete a workday," and "[p]er the testimony of the vocational expert at plaintiff's hearing, an individual with these limitations would not be able to meet the demands of any job").
In this case, the record persuasively demonstrates Plaintiff's disability, and remand for calculation and payment of benefits is warranted. As discussed at length above, the opinion of treating orthopedist Dr. Capecci-including his assessment that Plaintiff would require four unscheduled absences per month-was well-supported and entitled to controlling weight by the ALJ. Moreover, at the October 2016 administrative hearing, the vocational expert opined that if a person with Plaintiff's impairments would be absent on an unscheduled basis for four days per month, there would be no work available for that person to perform. (Dkt. 6-14 at 72). Accordingly, had the ALJ appropriately credited Dr. Capecci's opinion, he would have been compelled to conclude that Plaintiff was disabled.
There is also no reason to think that further evidence would support the conclusion that Plaintiff is not disabled. Plaintiff has already had three administrative hearings, and the record contains multiple functional assessments and medical records spanning more than a decade. Accordingly, the Court concludes that the *252 proper remedy is to reverse the Commissioner's decision, and remand Plaintiff's case for the calculation and payment of benefits.
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted, the Commissioner's decision is reversed, and the matter is remanded solely for the calculation and payment of benefits. Defendant's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

The Physical Residual Functional Capacity Questionnaire completed by Dr. Capecci provided an option for 15 minutes of standing (see Dkt. 6-7 at 360); however, Dr. Capecci did not select that option. Rather, he opined that Plaintiff could stand for only 10 minutes.